THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WAYNE DAVIDSON, Appellant. [55 NYS3d 357]—

Appeals by the defendant (1) from a judgment of the Supreme Court, Kings County (Chun, J.), rendered March 4, 2009, convicting him of murder in the second degree and attempted murder in the second degree, upon a jury verdict, and imposing sentence, and (2), by permission, from an order of the same court dated May 10, 2012, which denied, after a hearing, his motion pursuant to CPL 440.10 to vacate the judgment of conviction.

Ordered that the judgment and the order are affirmed.

On June 20, 2002, in front of a crowd of people, Bakeem Townsel (hereinafter Bakeem) twice beat up the defendant for "disrespecting" Bakeem's mother, Audrey Townsel (hereinafter Audrey). Thereafter, the defendant's girlfriend, Francine Garnett, sought help from her nephew Michael Ortiz to get revenge. Ortiz, in turn, rallied his friends, the codefendant Billy Mazyck, Arthur Alston, and David Hardman, and, together with the defendant and Garnett, they devised a plan to shoot Bakeem. That night, the defendant and his accomplices went to Audrey's apartment in Coney Island, where Bakeem was staying. The men waited in the stairwell while Garnett knocked on the door and, as planned, the others emerged from the stairwell into the hall once the door was opened. Seven shots were fired into the apartment, one fatally striking Audrey in the back, and another passing through Bakeem's left knee. The evidence adduced at trial established that the bullets fired came from two guns, and that one gun was fired by Hardman. It is undisputed that the defendant was at no time in possession of a gun.

The defendant was convicted of murder in the second degree

and attempted murder in the second degree under an acting-in-concert theory.

The defendant's challenge to the legal sufficiency of the evidence is unpreserved for appellate review, as defense counsel failed to specify, in his general motion to dismiss the indictment, the arguments he raises now (*see* CPL 470.05 [2]; *People v Gray*, 86 NY2d 10, 19 [1995]). In any event, viewing the evidence in the light most favorable to the prosecution (*see People v Contes*, 60 NY2d 620 [1983]), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (*see* CPL 470.15 [5]; *People v Danielson*, 9 NY3d 342, 348 [2007]), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (*see People v Mateo*, 2 NY3d 383, 410 [2004]; *People v Bleakley*, 69 NY2d 490, 495 [1987]; *People v Mazyck*, 118 AD3d 728, 729 [2014]). With regard to the credibility of Alston, the prosecution's main and crucial witness, we addressed the issue in *People v Mazyck* (118 AD3d 728 [2014]), on the codefendant's appeal: "The criminal and unsavory background of Alston . . . and his having testified pursuant to a cooperation agreement, as well as his misrepresentations to the police and court both before and after his plea of guilty, were matters fully explored at trial and merely 'raised an issue of credibility which the jury resolved in favor of the prosecution' (*People v Harris*, 276 AD2d 562, 562-563 [2000]; *see People v Bernard*, 100 AD3d 916, 916-917 [2012]; *People v Chin*, 69 AD3d at 752-753; *People v Torres*, 47 AD3d 851, 852 [2008]; *People v Smith*, 302 AD2d 615, 616 [2003]), which it was entitled to do" (*People v Mazyck*, 118 AD3d at 729). Alston's account of the events of June 20, 2002, was internally consistent and in accord with the physical evidence and, moreover, sufficiently corroborated by the testimony of four nonaccomplice eyewitnesses (*see People v Reome*, 15 NY3d 188, 191-192 [2010]; *People v Breland*, 83 NY2d 286, 294 [1994]; *People v Daniels*, 37 NY2d 624, 629 [1975]).

The hearing court did not improvidently exercise its discretion in denying the defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction (*see People v Bryce*, 88 NY2d 124, 128 [1996]; *People v Singh*, 111 AD3d 767, 768 [2013]; *People v Cain*, 96 AD3d 1072, 1073 [2012]; *People v Deacon*, 96 AD3d 965, 967 [2012]). "The credibility determination of the hearing court, with its particular advantages of having seen and heard the witnesses, is entitled to great deference on appeal and will not be disturbed unless clearly erroneous"

(*People v Britton*, 49 AD3d 893, 894 [2008] [citation omitted]; *see People v Jacobs*, 65 AD3d 594, 595 [2009]).

To justify vacatur of a judgment of conviction based on newly discovered evidence pursuant to CPL 440.10 (1) (g), "the evidence must fulfill all the following requirements: '1. It must be such as will probably change the result if a new trial is granted; 2. It must have been discovered since the trial; 3. It must be such as could have not been discovered before the trial by the exercise of due diligence; 4. It must be material to the issue; 5. It must not be cumulative to the former issue; and, 6. It must not be merely impeaching or contradicting the former evidence' " (*People v Deacon*, 96 AD3d at 967, quoting *People v Salemi*, 309 NY 208, 216 [1955] [internal quotation marks omitted]; *see People v Malik*, 81 AD3d 981, 981-982 [2011]; *People v Tankleff*, 49 AD3d 160, 179 [2007]). At a hearing pursuant to CPL 440.10, the defendant has the burden of proving by a preponderance of the evidence every fact essential to support the motion (*see* CPL 440.30 [6]). "Implicit in th[e] ground for vacating a judgment of conviction is that the newly discovered evidence be admissible" (*People v Tankleff*, 49 AD3d at 182 [internal quotation marks omitted]; *see* 34B NY Jur 2d, Criminal Law: Procedure § 3476 at 42; *People v Mazyck*, 118 AD3d at 730).

The "new evidence" here consisted of: (1) a change in the plea agreement pursuant to which Alston testified at the defendant's trial, permitting Alston to plead guilty to manslaughter in the first degree, instead of murder in the second degree, and reducing the sentence promised to a determinate sentence of 15 years, from the 15 years to life originally promised, and (2) statements Alston allegedly made to a fellow inmate in which he admitted to having been the second shooter on June 20, 2002.

With regard to the change in plea and sentence, the defendant alleges that the prosecution breached its duty to disclose that, at the time Alston testified at the defendant's trial, during which both he and the prosecutor referred to his sentence of 15 years to life, both the prosecutor and Alston knew that the sentence would be reduced subsequently. The "existence of an agreement between the prosecution and a witness, made to induce the testimony of the witness, is evidence which must be disclosed under *Brady* principles [(*Brady v Maryland*, 373 US 83 [1963])]" (*People v Novoa*, 70 NY2d 490, 496 [1987] [internal quotation marks omitted]; *see 'People v Steadman*, 82 NY2d 1, 7 [1993]; *People v Cwikla*, 46 NY2d 434, 441 [1979]; *People v Jenkins*, 84 AD3d 1403, 1406 [2011]; *People v Tellier*, 272 AD2d

347, 348 [2000]). "Furthermore, the prosecutor has a duty to correct misstatements of a witness regarding the consideration given for that witness's testimony" (*People v Jenkins*, 84 AD3d at 1406; *see People v Steadman*, 82 NY2d at 7; *People v Tellier*, 272 AD2d at 348).

Here, the hearing court properly concluded that the defendant failed to prove by a preponderance of the evidence either that Alston lied at the trial about his plea agreement, or that there was any understanding or agreement between Alston and the prosecution at that time regarding a possibility that the plea would change. The court credited the testimony of the prosecutor and Alston to the effect, inter alia, that the prosecutor did not decide to request a change in the plea agreement until months after the defendant's trial, and that Alston was not aware of that decision at the time he testified, and there is nothing in the record that would warrant disturbing that determination (*see People v King*, 79 AD2d 992 [1981]).

With regard to Alston's alleged statements to a fellow inmate, the hearing court properly found that the alleged statements were inadmissible hearsay, as they did not fall within any exception to the hearsay rule (*see People v Mazyck*, 118 AD3d at 730; *People v Tankleff*, 49 AD3d at 182). While declarations which *exculpate* a defendant, such as those presented here, are subject to a more lenient standard, and will be found sufficient if they establish a reasonable possibility that the statement might be true (*see People v Settles*, 46 NY2d 154, 169-170 [1978]; *People v Deacon*, 96 AD3d at 968; *People v Fonfrias*, 204 AD2d 736, 738 [1994]), the record here reveals no possibility that Alston's alleged statements might be true. First, the alleged statements, in which Alston admitted to having been the second shooter on June 20, 2002, constituted recantations of statements to the contrary that he had made to the District Attorney's office and during his testimony at trial. "Recantation evidence is inherently unreliable and insufficient, alone, to justify setting aside a conviction" (*People v Mortensen*, 60 AD3d 971, 972 [2009]; *see People v Douglas*, 83 AD3d 1092, 1093 [2011]; *People v Legette*, 153 AD2d 760, 761 [1989]). Similarly unreliable and insufficient to justify vacatur of a judgment of conviction is new evidence, such as that proffered here, which "merely impeach[es] or contradict[s] the former evidence" (*People v Deacon*, 96 AD3d at 967 [internal quotation marks omitted]; *People v Malik*, 81 AD3d at 982 [internal quotation marks omitted]; *People v Tankleff*, 49 AD3d at 179 [internal quotation marks omitted]). In any event, the record supports the court's conclusion that the inmate's testimony about

Alston's alleged statements was "untrustworthy and absolutely incredible," based on "his demeanor during his testimony, his previous criminal convictions numbering over 50 and the incorrect details and vagueness of his testimony," which, for various reasons, "made absolutely no sense."

The sentence imposed was not excessive (*see People v Suitte*, 90 AD2d 80 [1982]). Dillon, J.P., Cohen, Maltese and Duffy, JJ., concur.